**Vernon T. MIXON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 0010–90.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 27, 1991.

Stanley C. Kirk, on appeal only, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & Kimberly Aperauch Stelter, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

### PER CURIAM.

Appellant was convicted of murder in a bench trial upon his plea of nolo contendere. The trial judge also assessed his punishment, enhanced by a prior conviction, at 60 years confinement in the penitentiary. On direct appeal, appellant raised six points of error addressing the trial judge's affirmative finding of use of a deadly weapon "to-wit an unknown object." The court of appeals affirmed appellant's conviction. *Mixon v. State,* 781 S.W.2d 345 (Tex.App.—Houston [14th Dist.] 1989). We granted appellant's petition for discretionary review on two interrelated grounds for review to determine whether the court of appeals erred in holding that the finding of "an unknown object" as a deadly weapon was proper and that there was sufficient evidence to support an affirmative finding that a deadly weapon was used in commission of this offense. We will affirm.

We have reviewed that part of the court of appeals' opinion dealing with the merits of an affirmative finding of an unknown object as a deadly weapon and the evidence in support thereof.[1] We find the reasoning of the court of appeals is sound. We therefore adopt that part of the opinion as our own, without further comment. *January v. State,* 732 S.W.2d 632 (Tex.Cr.App.1987).

Appellant's grounds for review are overruled, and the judgment of the court of appeals is affirmed.

OVERSTREET and MALONEY, JJ., not participating.

CLINTON, Judge, concurring.

"Our prior opinions [under former penal codes] on the meaning of 'deadly weapon' do and should have instructional significance under the new Penal Code." *Mosley v. State,* 545 S.W.2d 144, 145–146 (Tex.Cr. App.1976); *Turner v. State,* 664 S.W.2d 86, at 89–90 (Tex.Cr.App.1983).

Under former penal codes an accepted definition of "deadly weapon" was "one which, from the manner of its use, is calculated or likely to produce death or serious bodily injury." *Miller v. State,* 140 Tex. Cr.R. 182, 143 S.W.2d 778, 779 (1940); *Harris v. State,* 72 Tex.Cr.R. 491, 162 S.W. 1150 (1914); *Hardy v. State,* 36 Tex.Cr.R. 400, 37 S.W. 434 (1896); see Branch's Criminal Law § 83 and 4 Branch's Annotated Penal Code (2d Ed.1956) 134, § 1754; see also 1 Texas Annotated Penal Statutes (Branch's 3rd Ed.1974) 27, § 1.07(11).

In applying that definition, however, the Court fully settled the proposition that "the instrument or weapon used to strike with is not *per se* a deadly weapon, *nor is it the law that, if death results, therefore the conclusion is that the weapon used was a deadly weapon.*" *Hilliard v. State,* 87 Tex.Cr.R. 15, 218 S.W. 1052, 1053 (1920), and cases and authorities cited therein. In such cases of homicide courts focused on the demonstrated intent of the accused. *Crow v. State,* 55 Tex.Cr.R. 200, 116 S.W. 52, at 53–54 (1909) (intent of accused is often very strong and controlling fact).

In this cause the "deadly weapon" is alleged to be "an unknown object used by the defendant;" a medical examiner testified that whatever object was used, whether it was a hand, a shoe or something else, put a pressure on the neck that caused the hemorrhage that asphyxiated the body of deceased. *Mixon v. State,* 781 S.W.2d 345, at 347 (Tex.App.—Houston [14th] 1989).

Thus the court of appeals said, "In other words, the object, in the manner of its use by the appellant, caused the complainant's death." *Ibid.* According to decisions of

---

1. *Mixon,* 781 S.W.2d at 346, Column 2, first full paragraph, to p. 347, Column 2, Line 7.

the Court cited above, that fact alone is not sufficient. However, appellant made a judicial confession that he did "intend to cause serious bodily injury to [complainant] and did cause [her death] by intentionally and knowingly committing an act clearly dangerous to human life, namely, by strangling [her with an unknown object]." Those admitted facts demonstrate his intent and, coupled with the medical testimony, satisfactorily support a deadly weapon finding.

Therefore, I join the judgment of the Court.*

TEAGUE, Judge, dissenting.

Not believing that the majority opinion does justice in this cause, I am compelled to file this dissenting opinion.

The first step in determining the validity of a deadly weapon finding in the trial court's judgment is to ascertain if the accused was given proper notice that the State intended to seek such a finding. It should be axiomatic that an accused is entitled to notice that the State will pursue an affirmative finding of the use of a deadly weapon. Previously, it was fundamental error to submit a special issue on the use of a deadly weapon to a jury without having provided the requisite notice. *Ex parte Patterson*, 740 S.W.2d 766, 775–777 (Tex. Cr.App.1987). In this instance, the jury was called upon only to decide whether appellant was guilty. Two theories were presented to the jury. Only one contained an allegation relating to a deadly weapon, but this allegation only stated "a deadly weapon, to-wit: an unknown object." The jury returned a general verdict of guilty so we do not know whether the jury's verdict related to the "unknown object" allegation.

The majority opinion's holding that merely pleading "a deadly weapon, to wit: an unknown object" in the indictment, which does not concern the often used "unknown to the Grand Jury" allegation, is more than sufficient to give the accused notice that the trial judge might later enter an affirmative finding in the judgment that the accused used or exhibited a deadly weapon during the commission of a felony offense or during immediate flight therefrom, see Art. 42.12, § 3g, V.A.C.C.P., does not really shock me in light of this Court's majority opinion of *Grettenberg v. State*, 790 S.W.2d 613 (Tex.Cr.App.1990), henceforth *Grettenberg*, which implicitly held that notice could be given the accused on a separate sheet of toilet tissue, and expressly held that no notice at all need be given in the charging instrument itself, but that the State was entitled to rely upon what might have previously been originally alleged in the charging instrument to sustain a deadly weapon finding. *Grettenberg* implicitly overruled *Ex parte Patterson*, 740 S.W.2d 766 (Tex. Cr.App.1987), and *Luken v. State*, 780 S.W.2d 264 (Tex.Cr.App.1989), regarding the giving of notice to the accused. Therefore, it would be proper for the majority opinion to do expressly in this cause what has already been done implicitly, namely, expressly overrule *Ex parte Patterson*.

The really sad part about the majority opinion, however, is its statement that "We find the reasoning of the court of appeals is sound." I, however, find nothing more in the court of appeals' opinion than a conclusory statement to support its holding regarding the giving of notice; I find no "sound reasoning" therein.

In this instance, as appellant's counsel easily demonstrates, there is only speculation as to what the instrument causing death could have been—"a hand, tie, elbow, knee, belt, shoe, arm, or some blunt object." The jury was given the opportunity to find appellant guilty under one of two counts set out in the indictment; only one of which mentioned use of a deadly weapon. The jury returned a general verdict of

---

* Like the court of appeals, "[I] find no case that has specifically dealt with the issue of an absent, unidentified deadly weapon[,]" *Mixon*, supra, at 346, and I share some of the concerns expressed by Judge Teague in his dissenting opinion. Particularly, because decisions of this Court have now made probable (if not obligatory) an af-

firmative finding in every case where any "thing" is used to cause the death of an individual, the Legislature will save the Judicial Department inordinate amounts of time and effort by simply adding "murder" to offenses enumerated in Article 42.12, § 3g(a)(1), V.A.C.C.P.

guilty, thus not specifying that it found appellant guilty under the count in which the use of a deadly weapon was mentioned ("unknown object"). The court of appeals made an unsuccessful effort to distinguish *Ex parte Moore,* 727 S.W.2d 578 (Tex.Cr. App.1987), a case that appears to me directly on point to the above facts of this cause.

For unknown reasons, when the Legislature enacted and later amended Art. 42.12, V.A.C.C.P., it failed to enumerate the offense of murder in § 3g, supra. This omission has caused some members of the courts of appeals and this Court, who are strongly in favor of deadly weapon findings, to attempt to overcome this omission in murder cases in almost magical ways. The court of appeals' opinion in this cause is one of those "magical" opinions regarding disposing of a challenge to the sufficiency of giving notice to the accused that a deadly weapon finding might be later entered in the trial court's judgment where the alleged offense is murder.

If one carefully reads this Court's opinions that have been issued since 1981, which involve the issue of a deadly weapon finding, I believe that he will find, as I have, that collectively they represent a bowl of spoiled stew. Therefore, in order for a good bowl of stew to be placed on the table, I strongly suggest to the next Legislature that it amend Art. 42.12, § 3g, V.A. C.C.P., to provide: "The provisions of Sections 3 and 3c of this Article do not apply to any offense defined in the Penal Code." Thus, every single offense in the Penal Code will be an enumerated offense. At least this will eliminate the need for this Court to unnecessarily spend, approximately every six months, many hours re-resolving a deadly weapon issue, and writing on what appears to be a clean plate. It will also placate a large segment of the public who believe that all felons should not be eligible for release on parole until the convict's actual calendar time served, without consideration of good time, equals one-fourth of the maximum sentence or 15 calendar years, whichever is less, but in no event shall he be eligible for release on parole in less than two calendar years.

This opinion was prepared by TEAGUE, J., prior to his untimely death.